UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JACQUELINE SMITH,                  :
                                   :      HONORABLE JOSEPH E. IRENAS
        Plaintiff,                 :
                                   :      CIVIL ACTION NO. 05-4219 (JEI)
        v.                         :
                                   :
TOWNSHIP OF EAST GREENWICH,        :          **OPINION**
EAST GREENWICH TOWNSHIP            :
POLICE DEPARTMENT, CHIEF           :
WILLIAM E. GIORDANO, DEPUTY        :
SCOTT A. GOESS,                    :
                                   :
        Defendants.                :
                                   :


**APPEARANCES:**

FOLKMAN LAW OFFICES, P.C.
By: Heidi Kopelson, Esq.
    Benjamin Folkman, Esq.
1415 Route 70 East, Suite 407
Cherry Hill, NJ 08034
      Counsel for Plaintiff


LOUIS ROSNER
1100 North American Building
121 South Broad Street
Philadelphia, PA 19107
      Counsel for Defendants Chief William E. Giordano and Deputy
      Scott A. Goess


ALLAN E. RICHARDSON, LLC
By: Allan E. Richardson, Esq.
    Linda A. Galella, Esq.
915 Haddon Ave.
Collingswood, NJ 08108
      Counsel for Defendants

**IRENAS**, Senior District Judge:

Plaintiff, Jacqueline Smith,[1] a Sergeant on the East Greenwich Police Department, brings this action against the Township of East Greenwich, East Greenwich Township Police Department, Chief William E. Giordano, and Scott A. Goess (collectively "Defendants").  Smith alleges that the Defendants discriminated against her and retaliated against her in violation of: (a) the Fifth and Fourteenth Amendments of the United States Constitution (Count One);[2] (b) the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-2 (Count Two); and (c) the Conscientious Employee Protection Act ("CEPA")(Count Three).  She further claims Defendants' conduct amounts to intentional infliction of emotional distress (Count Four).  For the reasons set forth below, Defendants' motion for summary judgment on all four counts will be granted.[3]

---

[1]  Prior to marriage, documents refer to Plaintiff by her maiden name, Jacqueline Geis.  For the purposes of this opinion, Plaintiff will be referred to as Jacqueline Smith.

[2]  Smith brings this claim pursuant to 42 U.S.C. § 1983 ("§ 1983").  *See Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 477 (3d Cir. 2003) ("By its own terms, the statute does not create substantive rights. Instead, it only provides remedies for deprivations of rights established elsewhere in the Constitution or federal laws.")

[3]  This Court has jurisdiction under 42 U.S.C. § 1983.  Venue is appropriate pursuant to 28 U.S.C. § 1391.

**I.**

On August 10, 1988, Jacqueline Smith ("Smith") was hired as a police officer for the Township of East Greenwich.  (Compl. ¶ 7; Defs. 56.1 Stat. ¶ 1).[4]  During the relevant time period, Smith claims that she was the only female police officer employed with the East Greenwich Police Department, (Compl. ¶ 7), and there is no evidence to the contrary.

In the summer of 1994, Officer William Giordano was appointed as Chief of Police.  Shortly thereafter, a position for Lieutenant became available.  Chief Giordano, in announcing the promotional process for the position of Lieutenant, added the requirement of three years of supervisory experience.  (Def. Exs. H, I).  Smith was deemed ineligible to apply for the position because she did not meet this requirement.  (Compl. ¶ 9).[5] Officer Scott Goess, the only applicant, was promoted to Lieutenant.  (Def. Ex. H).  Smith was assigned to the position of Department Investigator, which, she asserts, was not a promotion. (Compl. ¶ 9).

At the end of 1994, a position became available for

---

[4]  All references to the Complaint herein refer to Plaintiff's Second Amended Complaint (Docket No. 3). References to "56.1 Stat." refer to the statements of material facts submitted by Smith and by Defendants.

[5]  Smith alleges that Giordano told her she was "excluded from applying because she had 'no supervisory experience.'" (Compl. 9).  It is, however, unclear from the record if Smith actually applied for the promotion.

Sergeant.  On December 6, 1994, Chief Giordano recommended Daniel Abate for the position.  (Def. Ex. J).  At the time, Abate had over fifteen years of experience with the East Greenwich Police Department, with several years experience as a shift commander in which he performed the duties of a Sergeant.  (Id.).  Abate was not required to take a written examination, (Giordano Dep. 51:19-20), but was nevertheless promoted to Sergeant.

In late fall of 1996, Chief Giordano implemented a new promotional procedure for the position of Sergeant.[6]  Smith and four other candidates applied for the position.  On January 3, 1997, Chief Giordano recommended Smith for promotion, noting that her integrity, loyalty and dedication were exemplary.  (Def. Ex. M).  Smith received the highest overall score in the seven categories in which candidates competed.  She was promoted to Sergeant on January 14, 1997.  *Id.*

In December of 1999, Smith became the subject of an Internal Affairs investigation.  Goess, who conducted the investigation, recommended that disciplinary charges be brought against Smith for violation of the Department Rules and Regulations.  (Def. Ex. O).  On December 9, 1999, an informal hearing was held. Smith was found guilty of four instances of falsifying reports,

---

[6] The evaluative criteria were as follows: psychological assessment, weighted 15%; written examination, 20%; oral examination, 20%; personnel file and profile, 20%; seniority, 5%; recommendation of Chief, 10%; and Township Committee Interview, 10%.  (Def. Ex. L).

one instance of improper shift relief and one instance of failing to properly supervise a probationary employee. *Id.*

As a result of the investigation, Chief Giordano sent Smith a letter on January 25, 2000, offering a one-day suspension from duty and a one-day loss of time. Smith rejected Chief Giordano's offer and chose instead to have a hearing before the East Greenwich Township Committee ("EGTC"). (Def. Ex. O). The EGTC conducted hearings from July, 2000, through October 18, 2000, and found Smith guilty of all charges. She was suspended for seven days for each of the four instances of falsifying patrol reports, one day for an instance of leaving a shift early, and one day for an instance of improper supervision of a probationary officer. (Def. Ex. Q). Smith was permitted to serve the suspension time concurrently, which she served, without pay, for eight working days in December, 2000.[7] Id.

As a result of the investigation and administrative proceedings, Smith filed a complaint on August 21, 2000, with the Equal Employment Opportunity Commission ("EEOC"), alleging disparate treatment and sexual harassment as a result of her gender in violation of Title VII of the Civil Rights Act.

---

[7] During the course of the administrative proceedings, the Departmental Ordinance regarding an officer's record of discipline was modified to reflect that all records of discipline become a permanent part of the officer's file. The prior ordinance allowed for an officer's record to be expunged if there were no recurrences within a two-year period. (Compl. ¶ 17).

(Compl. ¶ 18).  The EEOC sent a letter entitled "Dismissal and Notice of Rights," indicating that it was "unable to conclude that the information obtained establishes violations of statutes," and closing the file.  (Def. Ex. X).

In 2003, Smith became the subject of a second Internal Affairs investigation.  (Compl. ¶ 26; Def. Ex. Y).  On July 9, subordinate officers, John Seas and William Crothers, approached Captain Goess with their concerns over Smith's failure to back up their calls.  (Def. Ex. Y).  The investigation led to a number of charges against Smith for failure to back up officers, ordering an officer to change his report, lack of candor during an Internal Affairs investigation, and failure to supervise.  (Id.).

The charges were brought before an independent hearing officer.  On January 29, 2004, Daniel Bernardin, Esq., was appointed to preside over the hearing regarding Smith's disciplinary charges.  In a written decision, Hearing Officer Bernardin found Smith guilty of two charges of misconduct due to Smith's: (1) failure to promptly return to headquarters to supervise and assist her subordinate, Officer Seas, after he made an arrest, in violation of Standard Operating Procedure ("SOP") 39:4-10.2(b);[8] and (2) ordering an officer to falsify his

_____

[8]  SOP 39:4-10.2(b) provides that, when a Patrol Supervisor is "aware that an arrest . . . has been effectuated, [she] must respond to the scene to assist the arresting officer and check to ensure that proper procedures are being followed, whenever possible."  (Def. Ex. Z, p.8).  Hearing Officer Bernardin found that Smith violated this

report.[9]  (Def. Ex. Z).  Judge Bernardin addressed Smith's
allegations that the charges were improperly motivated.  He found
no evidence of improper motive or gender bias, noting that
subordinate officers Seas and Crothers brought the complaints and
Goess was, therefore, obligated to investigate.  He also noted
that "while the evidence strongly suggests that neither Seas nor
Crothers liked being under the command of a woman, the police
administration cannot be found to have shared their feeling and
the subject charges are not the product of bias by the
administration."  (Id.)  Smith was suspended for 90 days for each
of the violations, which were to run concurrently.[10]  (Def. Ex.

---

SOP, also referred to as a cell block policy, when she was notified
that Seas had made an arrest, but stopped to respond to a friend's
complaint before going to headquarters to assist Seas.  (Id.).

[9]  Specifically, Hearing Officer Bernardin found that Smith
improperly pressured Officer Crothers to omit references to drinking,
intoxication, and abusive language toward an officer, in an
investigation report he wrote on July 4, 2003.  (Def. Ex. Z).
Crothers wrote this report after confiscating illegal fireworks from a
Fourth of July party attended by friends of Smith.  (Id.).  The report
was then reviewed by Smith, Crothers's supervisor.  (Id.).  Hearing
Officer Bernardin reported that "[a]ccording to both Crothers and
Seas, Smith felt the report mischaracterized the [incident], cast a
bad light on her friends and could be used by police administration to
require criminal or other charges to be brought against the homeowner
or party guests." (Def. Ex. Z, p.10).

[10]  Smith appealed Hearing Officer Bernardin's determination to the
Superior Court of New Jersey, Law Division, Gloucester County.  (Def.
Ex. BB).  The appeal was taken pursuant to N.J. Stat. § 40A:14-150,
which provides that "[a]ny member or officer of a police department .
. . who has been tried and convicted upon any charge or charges, may
obtain a review thereof by the Superior Court[.]"  The Honorable G.
Thomas Bowen heard the case de novo, as is required under § 40A:14-
150, and took additional evidence on the record on October 3, 2006.
(Def. 56.1 Stat. ¶65).  On May 4, 2007, Judge Bowen affirmed Hearing
Officer Bernardin's findings on both charges.  (Def. Ex. BB).  He

AA).

In November of 2004, the position for Lieutenant became available.  On December 8, 2004, Chief Giordano changed the promotional criteria for Lieutenant and for Sergeant.  (Giordano Dep. 92:15-24; Def. Ex. EE).  When Smith confronted Chief Giordano regarding the evaluative criteria changes, Smith contends that he yelled at her to "get the hell out of here." She claims he continued, "What's this more of a conspiracy theory?" and "I'm sick of hearing it.  I've been Chief here long enough to know what's important."  (Pl.'s Am. Compl. ¶ 29).

Nevertheless, Smith applied for the position of Lieutenant around December, 2004.  Smith earned a cumulative score higher than any of the other candidates in the categories of Written Examination, Oral Examination, and Township Interview.  (Pl. 56.1 Stat. ¶ 70; Def. Opp. 56.1 Stat. ¶ 70).  She received zero out of fifty points in the Discipline Record and Recommendation of Chief categories, and twenty out of twenty points in the category of Awards, Commendations, and Letters.  *Id.*  On March 8, 2005, Chief Giordano informed her by letter that she had not been selected for the position of Lieutenant because she "did not score well enough to be recommended for promotion."  (Pl. Ex. BB).

---

reduced her sentence, however, from two concurrent 90-day suspensions to two concurrent 30-day suspensions.  (Id.).  He further found that Smith's allegations that the charges were brought against her as a result of discrimination and retaliation "have no merit."  (Id. at p.11).

On August 25, 2005, Smith filed this action.  For the reasons set forth below, Defendants' motion for summary judgment will be granted.

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  "'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

9

III.

Defendants move for summary judgment on Count One, in which Smith alleges that she was deprived of her substantive due process rights under the Fifth Amendment to the United States Constitution, pursuant to § 1983.[11]  Specifically, Smith claims that she was deprived of her constitutional right to public employment when Defendants suspended her for 90 days without pay and reduced her employee benefits.

Section 1983 allows a civil action to be brought for deprivations of rights.  It reads, in relevant part:

> Every person, who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.  Therefore, Smith must establish that Defendants' conduct constituted state action or action under the color of law, and that the conduct deprived her of rights, privileges or immunities secured by the Constitution or laws of the United States.  *See Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d

---

[11]  Although the language guaranteeing due process is identical in the Fifth and Fourteenth Amendments, the Fifth Amendment applies to actions taken by the federal government, whereas the Fourteenth Amendment applies, on its face, to state action.  *See Bowman v. Twp. of Pennsauken*, 709 F. Supp. 1329, 1339 (D.N.J. 1989).  Therefore, the Court will treat Smith's claim as alleging a violation of the due process clause of the Fourteenth Amendment.

10

Cir. 1996).  Because Defendants do not contest that they acted under the color of law, the Court must only determine whether Smith was deprived of a right to public employment guaranteed by the Fourteenth Amendment.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  The Third Circuit has recognized that the Due Process Clause incorporates a substantive and procedural component.  *See Nicholas v. Pennsylvania State University*, 227 F.3d 133, 139 (3d Cir. 2000) (*citing Planned Parenthood of S.E. Pennsylvania v. Casey*, 505 U.S. 833, 846-47 (1992)).  However, it has followed Justice Powell's view in *Regents of University of Michigan v. Ewing*, 474 U.S. 214, 228, that, "while property rights for procedural due process purposes are created by state law, substantive due process rights are created by the Constitution." *Mauriello v. U. of Med. & Dentistry of N.J.*, 781 F.2d 46, 50 (3d Cir. 1986); *Reich v. Beharry*, 883 F.2d 239, 244 (3d Cir. 1989); *Nicholas*, 227 F.3d at 142.

"The substantive component of the Due Process Clause limits what governments may do regardless of the fairness procedures that it employs, and covers government conduct in both legislative and executive capacities." *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 399 (3d Cir. 2000).  The

11

state cannot take away a property interest in a manner that is "arbitrary, irrational, or tainted by improper motive." *Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d 118, 124 (3d Cir. 2000) (*quoting Bello v. Walker*, 840 F.2d 1124, 1129 (3d Cir. 1988)); *McGovern v. City of Jersey City*, 2006 WL 42236 *13 (D.N.J. 2006).

"To prevail on a substantive due process claim under § 1983, a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d 118, 123 (3d Cir. 2000).  In order for the Due Process Clause to apply in this case, there must exist a constitutionally protected property interest in Smith's police employment.  *See Halstead v. Cumru Twp.*, 651 F. Supp. 658, 660 (E.D. Pa. 1986) (*citing Stana v. School District of Pittsburgh*, 775 F.2d 122 (3d Cir. 1985)).

> [W]hen a plaintiff challenges a non-legislative state action (such as an adverse employment decision), we must look, as a threshold matter, to whether the property interest being deprived is "fundamental" under the Constitution.  If it is, then substantive due process protects the plaintiff from arbitrary or irrational deprivation, regardless of adequacy of procedures used.  If the interest is not "fundamental," however, the governmental action is entirely outside the ambit of substantive due process and will be upheld so long as the state satisfies the requirements of procedural due process.

*Nicholas*, 227 F.3d at 142.

The Third Circuit has specifically held that public employment is not a constitutionally protected substantive right.

*Nicholas,* 227 F.3d at 143 ("join[ing] the great majority of courts of appeals that have addressed this issue").  The court, in *Nicholas*, found that a professor's property interest in his tenured professorship was not entitled to substantive due process protection because public employment is not so deeply rooted in tradition and history as to be deemed fundamental under the Constitution.  *Id.*

Following *Nicholas*, the District of New Jersey held that a plaintiff's property interest in his position as Sheriff's Officer was not entitled to substantive due process protection. *McGovern*, 2006 WL 42236 at *13 (granting defendants' motion for summary judgment "to the extent that Plaintiff asserts a substantive due process claim in connection with the issues of wage parity, pension, overtime, promotion to staff Sheriff's Sergeant position, and denial of transfer requests").  Likewise, Smith's public employment is not a property right protected by the substantive Due Process Clause of the Fourteenth Amendment.

Because Defendants' actions are outside the ambit of substantive due process, the Court must determine whether Defendants have "satisfie[d] the requirements of procedural due process." *Nicholas*, 227 F.3d at 142.[12]  Assuming that Smith has

---

[12]  While Smith does not appear to allege any procedural due process claims, because the scope of her constitutional claims is unclear, the Court will construe the Complaint as alleging a claim of procedural due process for purposes of deciding Defendants' summary judgment motion.

a property interest in her public employment for purposes of procedural due process,[13] the record is replete with evidence that Defendants afforded Smith with procedural process before she was suspended as a result of the claims brought against her in 1999 and 2003.

In 1999, when Smith was the subject of an Internal Affairs Investigation, she was provided an informal hearing before Chief Giordano where both Smith and her Police Benevolent Association representative were present.  (Def. 56.1 Stat. ¶37).  Smith was found guilty of the charges brought against her, and she appealed the decision to the EGTC. (Id. at ¶¶38-41).  The EGTC conducted a hearing on the charges, which lasted from July to October 18, 2000, and found Smith guilty of all charges.  It suspended her for a total of thirty days, which she was permitted to serve concurrently. (Id. at ¶43).

Similarly, Smith was afforded ample process when she became the subject of a second Internal Affairs Investigation in 2003. The investigation led to multiple charges against her, which were brought before Hearing Officer Bernardin, appointed January 29, 2004.  Smith, represented by counsel, was permitted to respond to

---

[13] "State law defines the property interests for purposes of procedural due process claims." *Flammer v. County of Morris*, No. 05-5039, 2006 U.S. Dist. LEXIS 17804, *11 (D.N.J. 2006)(quotations and citations omitted)(noting that the Third Circuit has "consistently held that government employees have a property interest in not being suspended or disciplined when the suspension or discipline can occur only 'for cause'").

the charges and to cross-examine witnesses during the nine-day hearing before Hearing Officer Bernardin.  (Def. R. 56.1 Stat. ¶¶56-7).  In a twelve-page decision, Hearing Officer Bernardin found Smith guilty of two charges of misconduct.  (Id. at ¶59).  Before determining the penalty for Smith's actions, however, he permitted the parties to submit additional evidence, and stated in his decision that "[i]f an additional hearing is necessary, please advise and the hearing officer will schedule a prompt conference call with counsel to schedule the additional hearing date."[14]  Hearing Officer Bernardin then issued a decision imposing a ninety-day suspension for each charge, to be served concurrently.

Smith appealed Hearing Officer Bernardin's decision to the Superior Court of New Jersey, Law Division. She received a de novo hearing before Judge Thomas Bowen, where she could again respond to the charges brought against her.  (Id. at 64-5). Judge Bowen affirmed the Hearing Officer Bernardin's findings, but reduced the penalty to two, thirty-day, concurrent suspensions. (Id at 66).  Accordingly, while Smith may not be pleased with the end result of her hearings, she was given the opportunity to respond to the charges on both occasions in hearings that occurred soon after the charges were brought, and to appeal the

---

[14]  It does not appear from the record that an additional hearing was held.

decisions to two independent bodies for review.  Thus, Defendants' summary judgment motion on Count One will be granted.

### IV.

### A.

In Counts One and Two, Smith claims gender discrimination in violation of the NJLAD and the Equal Protection Clause of the Fourteenth Amendment.  Smith's allegations of gender-based discrimination stem from Defendants' failure to promote her at various times throughout her employment, and their promulgation of regulations that caused Smith to become ineligible for certain promotions.  It also arises out the discipline Defendants imposed upon her.  Although the Complaint does not specify the discrimination theory upon which Smith attempts to proceed, the Court will treat the claims as ones of disparate treatment because Smith relies upon this theory in her summary judgment briefing.

The statute of limitations on a § 1983 action is two years.  *See Cito v. Bridgewater Township Police Dep't,* 892 F.2d 23 (3d Cir. 1989).[15]  Similarly, the statute of limitations on a NJLAD

---

[15] *See also Plain v. Flicker*, 645 F. Supp. 898, 901 (D.N.J. 1986). "There is no federal limitations period governing these two sections of the civil rights laws. Instead the courts 'borrow' the state law of limitations governing an analogous cause of action. . . . In *Garcia v. Wilson*, 471 U.S. 261,(1985) the Supreme Court held that claims under 42 U.S.C. § 1983 are best characterized as personal injuries and so should be governed by the appropriate state statute of limitations. In

claim is two years, subject to the exception of the continuing violations doctrine. *See Shepherd v. Hunterdon Developmental Ctr.*, 174 N.J. 1 (2002); *Montells v. Haynes*, 133 N.J. 282, 292 (1993). The continuing violations doctrine allows a "plaintiff [to] pursue a claim for discriminatory conduct if he or she can demonstrate that each asserted act by a defendant is part of a pattern and at least one of those acts occurred within the statutory limitations period." *Shepherd,* 174 N.J. at 7.

Here, Smith alleges discrimination based upon the Defendants' failure to promote her to Lieutenant in 1994, Sergeant in 1994, and Lieutenant in 2005. She further alleges discriminatory discipline based upon her eight-day suspension in late 2000, for allegedly falsifying reports. She argues that this suspension was discriminatory because she had disclosed a widespread practice within the department of falsification, yet no other officer was investigated. She further claims that in 1998, Chief Giordano knew that Dan Abate was sleeping on the job but did not investigate him, even though Smith was investigated in 1990, based upon rumors that she was leaving her shift early.[16] Lastly, Smith claims that she was discriminated against

---

New Jersey the statute of limitations in personal injury actions is two years, N.J.S.A. 2A:14-2." *Id.*

[16]  Although Smith fails to indicate in her summary judgment briefing when she was investigated, the record reveals that she received a letter of reprimand on May 1, 1990, because she left her shift early. The letter was signed by the Shift Commander, Scott

when charges were brought against her in 2003, alleging that she
falsified a report when, on October 18, 2001, Goess had also
changed a report.  She does not, however, claim that anyone was
aware of the fact that Goess made such changes until he admitted
to doing so in his deposition on March 16, 2007.

The majority of Smith's discrimination claims occurred well
over two years before Smith commenced this litigation.  Thus,
they are barred by NJLAD and § 1983's statutes of limitations.[17]
Smith's claims cannot be saved under the continuing violation
theory, because an employer's failure to promote is
quintessentially a discrete employment action.  *See AMTRAK v.
Morgan*, 536 U.S. 101, 115 (U.S. 2002)("Each discrete
discriminatory act starts a new clock for filing charges alleging
that act*.*  Discrete acts such as . . . failure to promote . . .
are easy to identify.  Each incident of discrimination and each
retaliatory adverse employment decision constitutes a separate
actionable 'unlawful employment practice.'); *see also Rush v.
Scott Specialty Gases*, 113 F.3d 476, 484 (3d Cir. 1997)(holding

---

Goess. (Def. Ex. T).

    [17] Defendants asserted statute of limitations as an affirmative
defense, but did not argue it until their reply brief.  Although the
Court recognizes that it is not proper for a party to raise an
argument for the first time in its reply brief, *see Int'l Raw
Materials, Ltd. v. Stauffer Chem. Co.*, 978 F.2d 1318, 1327 n.11 (3d
Cir. 1992)*,* the Court has found no rule barring it from raising the
issue *sua sponte*, or prohibiting it from considering the argument
in the reply brief.  Because Smith's claims date back more than twelve
years before she commenced this action, the Court will consider the
statute of limitations argument.

that plaintiff's failure to promote claim and train claims are "discrete instances of alleged discrimination that are not susceptible to a continuing violation analysis.").  Likewise, discriminatory discipline actions are discrete employment actions.  *See O'Connor v. City of Newark*, 440 F.3d 125 (3d Cir. 2006)(following *Morgan* and enumerating discrete acts that are not susceptible to the continuing violations doctrine, including "wrongful discipline"); *see also Gadson v. City of Wilmington Fire Dep't*, 478 F. Supp. 2d 635 (D. Del. 2007)(holding that plaintiff's claims of "disparate treatment in defendant's imposition of discipline, as well as 'hiring and promotional policies and practices' which have a disparate impact upon defendant's Black and Hispanic employees" are discrete acts that "cannot be aggregated under a continuing violations theory").  Thus, the Court will dismiss all of Smith's discrimination claims except for her claims of (1) failure to promote in 2004, and (2) discriminatory discipline in 2003.

**B.**

The Court will review the § 1983 claim and the NJLAD claim together, as they arise out of the same actions and are reviewed under essentially the same standards.[18]  In a failure to promote

---

[18] "Gender discrimination claims under the Equal Protection Clause are analyzed using the framework established by *McDonnell Douglas Corp. v. Green* []. . . To establish a prima facie case of gender discrimination under the Equal Protection clause, Plaintiff must prove the existence of purposeful discrimination.  Specifically, Plaintiff

case, a plaintiff establishes a prima facie case by showing, by a preponderance of the evidence, that: "(1) he is within a protected class; (2) he sought and was qualified for the promotion; (3) he was rejected for the promotion; and (4) nonmembers of his protected class were treated more favorably - alternatively stated, that the promotion went to someone with equal or lesser qualifications who was not in the protected class." *Rogers v. Alternative Res. Corp.*, 440 F. Supp. 2d 366, 371 (D.N.J. 2006)(citing *Bennun v. Rutgers*, 941 F.2d 154, 170 (3d Cir. 1991)).

If plaintiff sets forth a prima facie case, the burden shifts to defendant to show a legitimate, non-discriminatory reason for its action. *Gerety v. Atl. City Hilton Casino Resort*, 184 N.J. at 399. Plaintiff then has the opportunity to demonstrate that defendant's proffered reason was mere pretext. *Id.* To establish pretext, plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v.*

---

must prove that she receiv[ed] different treatment from that received by other individuals similarly situated and that the disparate treatment was based upon her gender." *King v. Cape May County Bd. of Freeholders*, 2007 U.S. Dist. LEXIS 57515 (D.N.J. 2007)(internal citations and quotations omitted).

*Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).[19]

Defendants argue that Smith cannot show that she was qualified for the promotions she sought.  The promotional criteria used by Chief Giordano were both objective and subjective.  "[W]hile objective job qualifications should be considered in evaluating the plaintiff's prima facie case, the question of whether an employee possesses a subjective quality . . . is better left to the later stage of the *McDonnell Douglas* analysis."  *Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 938 (3d Cir. 1997); *see also Fitzpatrick v. Nat'l Mobile TV*, 364 F. Supp. 2d 483, 489 (M.D. Pa. 2005)("Subjective analysis of a plaintiff's job performance is inappropriate at the prima facie stage, and is properly suited as a legitimate nondiscriminatory reason for termination. . . . [T]he proper inquiry is whether the plaintiff is objectively qualified to perform the job.")  Moreover, "[w]hile more than a denial of promotion as a result of a dispute over qualifications must be shown to prove pretext, such a dispute will satisfy the plaintiff's prima facie hurdle of establishing qualification as long as the plaintiff demonstrates

---

[19]  Although the *Fuentes* court discussed this standard in connection with a disparate treatment action under Title VII, the same standard applies to disparate treatment cases brought under the NJLAD.  *See Gerety*, 184 N.J. at 399("In respect of a disparate treatment claim, we have noted the inherent difficulty of proving discriminatory intent and have conformed our analysis in substantial measure to the burden-shifting framework enunciated in *McDonnell Douglas Corp. v. Green*")(citing *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 447 (2005)).

that she was sufficiently qualified to be among those persons from whom a selection, to some extent discretionary, would be made." *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 523 (3d Cir. 1992)(citations and quotations omitted).

Objectively, Plaintiff was the most senior officer and received the highest scores on her oral and written evaluations. (Pl. R. 56.1 Stat. ¶ 70). She had a disciplinary record, but there is no indication whether the extent of her record was any better or worse than her colleagues. However, because disciplinary record was only one factor in the promotional determination, Smith's prior discipline could not, alone, have deemed her unqualified. Smith also scored a zero in the category of Chief's recommendation. Because this category is subjective, however, it is not appropriate for evaluation in the prima facie stage. Thus, Smith has demonstrated that she was sufficiently qualified to be considered for the position of Lieutenant.

Defendants challenge Smith's ability to establish prong four, arguing that the promotion went to Sergeant Jenkins, who was more qualified due to his superior disciplinary record. Because a candidate's disciplinary record was only one of many factors considered in the promotional process, Jenkins's superior disciplinary history cannot, in and of itself, establish that he was more qualified. Accordingly, Smith has satisfied the minimal requirements of establishing a prima facie case of

discrimination.  *See Ezold*, 983 F.2d at 523 (noting that "the prima facie case is easily made out").

Defendants have also met their burden of articulating a legitimate, non-discriminatory reason for not promoting Smith. Chief Giordano testified that he changed the promotional criteria in order to place more emphasis on an officer's work history rather than on examination scores.[20]  (Def. Ex G, 92:15-24).  He allegedly based his decision to give Smith a zero out of fifty possible points on the Recommendation of Chief category due to her "significant disciplinary history."  (Def. Reply Br. p. 7). Defendants specifically rely on Smith's record of falsifying log books, violating the cell block policy, and pressuring a subordinate officer to change a report. (Id.).

Smith attempts to rebut Defendants' articulated reason by arguing that because she is a "twenty three (23) year veteran of police work who was in a supervisory role as a sergeant for eight (8) years, and who had received the highest cumulative score on

---

[20]   The evidence shows that Chief Giordano decreased the weight of the exams from 20% to 12.5% each.  Smith received the highest examination scores.  He increased the weight given to personnel file and profile from 20% to 40%, which negatively affected Smith due to her falsification of reports that led to a thirty day suspension. Recommendation of Chief was increased from 10% to 25%, and interview by the Township Public Safety Committee was given 10%.  (Def. Ex. DD) Chief Giordano gave Smith a zero in the category of Chief's Recommendation, which he testified is based upon his feeling of the overall ability of a candidate to assume a particular position at that time.  (Pl. Ex. F 94:6-95:15).  Seniority of the officer was omitted from the evaluative process.  *Id.*  Smith was the most senior officer of the candidates applying for Lieutenant.  (Pl.'s Am. Compl. ¶ 28, Giordano's Dep. 90:7-14).

the tests taken by the candidates to assess their knowledge base of the position," it belies logic that she could receive a zero on the Chief's Recommendation.  Essentially, Smith is asking the Court to evaluate all of her qualifications to determine whether the Chief had a basis for giving her a zero on his recommendation.  In limiting a court's determination of pretext to the employer's articulated reason, this is expressly the type of determination by a district court that the *Ezold* decision sought to avoid.  It stated that,

> [w]ithout such a limitation, district courts would be
> routinely called upon to act as members of an
> employer's promotion board or committee. It would
> subjectively consider and weigh all the factors the
> employer uses in reaching a decision on promotion and
> then make its own decision without the intimate
> knowledge of the history of the employer and its
> standards that the [employer's] decisionmakers use in
> judging the degree to which a candidate exhibits a
> particular qualification that the employer has decided
> is of significance or primary importance in its
> promotion process. Pretext is not established by
> virtue of the fact that an employee has received some
> favorable comments in some categories or has, in the
> past, received some good evaluations.

*Ezold*, 983 F.2d 509, 528 (3d Cir. 1992).

The *Ezold* court held that "[w]here an employer produces evidence that the plaintiff was not promoted because of its view that the plaintiff lacked a particular qualification the employer deemed essential to the position sought, a district court should focus on the qualification the employer found lacking in determining whether non-members of the protected class were

24

treated more favorably." 983 F.2d at 528.  Smith does not dispute
that she has a disciplinary record, or that at the time Giordano
changed the promotional criteria and wrote Smith's
recommendation, she was the subject of an ongoing disciplinary
hearing.  Nor has Smith presented any evidence that Jenkins was
deficient in the same categories as her - namely, that Jenkins
had a similar disciplinary record - or any other evidence from
which the Court could evaluate Jenkins's or any other candidate's
qualifications.[21]  In fact, Smith has not provided the Court with
any information about any other applicant for the position of
Lieutenant.

    Smith has not come forth with any evidence, either direct or
circumstantial, from which a factfinder could reasonably
disbelieve Giorando's reasons, or believe that gender-based
discrimination was more likely than not the reason for his
actions.  Indeed, the only gender-based reference in the record
is that Hearing Officer Bernardin found, and Judge Bowen agreed,
that, "[c]oncerning the claim of gender bias, while the evidence
strongly suggests that neither Seas nor Crothers liked being
under the command of a woman, the police administration cannot be

---

[21]  "When an employer relies on its subjective evaluation of the
plaintiff's qualifications as the reason for denying promotion,
the plaintiff can prove the articulated reason is unworthy of
credence by presenting persuasive comparative evidence that
non-members of the protected class were evaluated more favorably,
i.e., their deficiencies in the same qualification category as
the plaintiff's were overlooked for no apparent reason when they
were promoted[.]" *Ezold*, 983 F.2d at 531.

found to have shared their feeling and the subject charges are not the product of bias by the administration." (Def. Ex. Z, p.12). Similarly in the record before the Court, Plaintiff has presented no evidence that Chief Giorando's decisions were motivated by bias. The fact that Smith's subordinate officers, John Seas and William Crothers, did not like working under a woman does not show that Gioradno's articulated reasons are unworthy of credence, or that it is more likely than not that Smith's gender was a motivating factor in his decisions. Because a reasonable factfinder could not find, based upon this evidence, that Giordano's statements were, in fact, pretext for gender discrimination, the Court will grant Defendants' motion for summary judgment.

### C.

Smith's NJLAD claim is also premised on her assertion that Defendants selectively enforced the rules and regulations, and that she has been the subject of discriminatory discipline. The court must "compare the discipline levied against the plaintiff to that against similarly situated employees outside of the plaintiff's protected class." *DePiano v. Atl. County*, No. 02-5441, 2005 U.S. Dist. LEXIS 20250, 29-30 (D.N.J. 2005)

> [T]he proper focus is on the employer's stated
> criteron or reason for taking its employee action. In
> other words, the Court must take the employer's stated
> reason for making its employment decision and then
> apply that stated reason to the supposedly similarly
> situated employee who was treated favorably.

*Id.* (internal citations and quotations omitted).

Smith claims discriminatory discipline based upon the charges brought against her in 2003 that she asked a subordinate officer to change a report that shed a negative light on her friends. The record reveals that from July to October, 2004, Hearing Officer Bernardin presided over Smith's disciplinary hearing. (Compl. ¶ 27). On February 23, 2004, Hearing Officer Bernardin issued his decision, in which he found Smith guilty of the falsification violation. (Compl. ¶ 31; Def. Ex. Z). He then issued a Determination of Penalty in March of 2005. Smith was suspended from March 25 to June 22, 2005. (Compl. ¶ 36; Def. Ex. Z, AA). The basis of Smith's allegation is that Goess also changed a report on a missing jacket in 2001. The jacket was originally reported as stolen, and Goess testified that he added a notation that the jacket may have been lost or misplaced "as per Captain Goess," (Pl. Ex. M, 69:1-2), thereby indicating that he made the notation. Goess was not investigated or disciplined for this act.

Assuming that Goess was similarly situated, this assertion is insufficient to prove disparate discrimination. First, the nature of the "falsifications" were different. While Goess noted in the report that he had made the changes, Smith pressured another officer to change a report and there is no indication in

27

the record that she made a notation to indicate that it was "per

Smith," as had Goess.  Furthermore, and critically, Smith does

not point to any evidence or even argue that prior to Goess's

deposition testimony on March 16, 2007, anyone knew that he

changed the report.  Thus, the fact that he was not investigated

for his conduct is of no moment.  Finally, there is no other

indication that Defendants investigated and disciplined Smith

because she is a woman.  Thus, Defendants' motion for summary

judgment on this claim will be granted.


## V.

Defendants next move for summary judgment on Smith's

retaliation claims under CEPA in Count Three, and under the NJLAD

and Count Two.  The Court will dismiss Smith's NJLAD retaliation

claims because they are subsumed under CEPA.  CEPA's waiver

provision provides that "the institution of an action in

accordance with this act shall be deemed a waiver of the rights

and remedies available under any other contract, collective

bargaining agreement, State law, rule or regulation or under the

common law."  N.J. Stat. § 34:19-8.

> The waiver provision applies to claims that are
> 'substantially related' to the CEPA claim . . . .
> Conversely, claims that do not require a showing of
> retaliation and require a showing of different proofs are
> not waived by the institution of the CEPA claim.  The
> waiver provision applies to claims upon the institution
> of a CEPA claim, therefore a claim will not be saved

merely because a court dismisses the underlying CEPA
claim.

*See Espinosa v. County of Union*, 2005 U.S. Dist. LEXIS 36563,
32-34 (D.N.J. 2005)(internal citations omitted); *see also Casper
v. Paine Webber Group, Inc.*, 787 F. Supp. 1480 (D.N.J.
1992)(dismissing RICO and public policy claims of retaliation
when Plaintiff also alleged CEPA violations arising out of the
same underlying facts).  The Court will dismiss Smith's NJLAD
retaliation claims because they arise out of the exact same
conduct as her CEPA claims.

A plaintiff asserting a CEPA violation must show: (1) a
reasonable belief that her employer's conduct violated a law,
rule, or regulation; (2) a whistle-blowing activity; (3) an
adverse employment action; and (4) a causal connection between
her whistle-blowing activity and the adverse employment action.
*See Caver v. The City of Trenton,* 420 F.3d 243, 254 (3d Cir.
2005); *Dzwonar v. McDevitt,* 177 N.J. 451, 462 (2003).  "Once the
plaintiff meets his prima facie burden, the burden of production
shifts to the defendant to articulate some legitimate,
nondiscriminatory reason for its actions."  *Blackburn v. UPS,
Inc.*, 179 F.3d 81, 92 (3d Cir. 1999)(internal quotations and
citations omitted).  The burden then shifts back to the plaintiff
to rebut defendant's articulated reason for its action. *See
Bowles v. City of Camden,* 993 F. Supp. 255, 262 (D.N.J.

29

1998)("the plaintiff must raise an issue of fact regarding whether the defendant's proffered explanation is pretextual or whether retaliatory discrimination was more likely than not a determinative factor in the decision").

Smith's claims arise out of four actions: (1) Defendant's denying her the opportunity to attend a leadership program; (2) Chief Giordano's 2004 actions in which he changed the promotional criteria for Lieutenant and gave Smith a negative evaluation on her application for promotion; (3) Defendants' request of severe sanctions for Smith's falsification violations as found by Hearing Officer Bernardin; and (4) Defendants' daily actions of degradation and humiliation.

Smith has satisfied prong one of her prima facie burden on all four claims, as she reasonably believed that her employer was violating the law by discriminating against her because she is a woman.  The Court will assume for the purposes of this motion that Smith has satisfied prong two - that when she complained to the EEOC, and when she testified before Hearing Officer Bernardin, she engaged in whistle-blowing activity.[22]

---

[22]  N.J. Stat. § 34:19-3(a) provides protections for an employee who "discloses . . . to a . . . public body an activity, policy or practice of the employer . . . that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law."  While not briefed by the parties, it is unclear whether Hearing Officer Bernardin is a "public body," or whether filing an individual charge of discrimination with the EEOC constitutes a protected activity under CEPA, a contention about which New Jersey courts disagree.  *See Competello v. LaBruno*, 2005 U.S. Dist. LEXIS 27878, 27-28 (D.N.J. 2005)(comparing *Sandom v. Travelers Mortg.*

Smith's ability to satisfy the remaining prima facie requirements, however, is heavily contested.  Smith first claims that approximately three years after she filed an EEOC Complaint, Chief Giordano retaliated against her when he told her that she could no longer attend a leadership program.  CEPA defines a retaliatory action as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19-2(e).  New Jersey courts have interpreted N.J.S.A. 34:19-2(e) "as requiring an employer's action to have either impacted on the employee's compensation or rank or be virtually equivalent to discharge in order to give rise to the level of a retaliatory action required for a CEPA claim."  *Caver v. City of Trenton*, 420 F.3d 243, 255 (3d Cir. 2005)(quotations and citations omitted).  Such actions include "discharges, suspensions, and demotions" as well as changes in the "length of the workday; increase or decrease of salaries, hours, and fringe benefits; physical arrangements and facilities; and promotional procedures."  *Beasley v. Passaic County*, 873 A.2d 673, 685-86 (App. Div. 2005)(internal citations omitted).

The denial of an opportunity to attend a leadership program is not a retaliatory action under CEPA.  It did not affect her

---

*Services, Inc.*, 752 F.Supp. 1240, 1244 (D.N.J. 1990) with *Smith v. Travelers Mortg. Services*, 699 F.Supp. 1080, 1083 (D.N.J. 1988)).

compensation or rank.  There is no indication in the record that
attending this program was linked to future career opportunities,
or that Smith's failure to attend was, in fact, linked to her
future job status in any way.[23]  Indeed, since 1997, no Sergeants
from the East Greenwich Township Police Department have attended
the leadership program.  (Def. R. 56.1 Stat. ¶72; Pl. Opp. 56.1
Stat. ¶72).

Next, Smith claims that she engaged in protected activity
when she testified in front of Hearing Officer Bernardin in 2004.
At the hearing, she complained that the disciplinary charges
brought against her in 2003 were improperly motivated in order to
thwart her career advancement because she is a woman.  In alleged
retaliation for such activity, Defendants requested that Hearing
Officer Bernardin impose the most severe sanctions of removal
from the police force or demotion to patrolman.  (Pl. 56.1 Stat.
¶76; Def. Opp. 56.1 Stat. ¶76).  Bernardin did not grant this
request, but rather suspended Smith without pay for ninety days.
(Id. at ¶¶77).  Again, Defendants' proposed sanction was not an
adverse employment action.  Rather, it was a proposal, which was
ultimately rejected.  As noted in *Beasley,* a "retaliatory action

---

[23]  Additionally, although not argued by the parties, this
claim is nevertheless barred by CEPA's one year statute of
limitations. *See* N.J.S.A. § 34:19-5; *Alderiso v. Med. Ctr. of
Ocean County, Inc.,* 167 N.J. 191, 770 A.2d 275 (2001).  Smith did
not file her Complaint until August 25, 2005, over a year after
the alleged retaliation in July, 2003.

does not encompass action taken to effectuate the [] suspension or demotion." 377 N.J. Super. at 684.

Also in purported retaliation to her testimony, Giordano changed the promotional criteria for Lieutenant and gave Smith a negative score on her promotional evaluation.  A change in promotional procedures is an adverse employment action under New Jersey law.  *See id*. at 685-86.  Smith, however, cannot demonstrate a causal connection between her testimony and Giordano's alleged retaliation.  First, the disciplinary charges about which Smith testified arose out of complaints brought by two of Smith's subordinate officers, John Seas and William Crothers, made to Captain Goess.  (Def. 56.1 Stat. ¶52).[24]  Goess then conducted an internal affairs investigation, (Id. at ¶54, Pl. Opp. 56.1 Stat. ¶54), which led to charges brought before Hearing Officer Bernardin. (Id. at ¶¶56).  Thus, the alleged retaliatory conduct was performed by an individual, Chief Giordano, who was not involved in the activity about which Smith testified.  Additionally, although Chief Giordano evaluated Smith, it was ultimately the decision of East Greenwich Township's Town Council whether to promote her.  (Pl. 56.1 Stat. & Def. Opp. 56.1 Stat. ¶¶87).  Furthermore, Giordano did not simply change the promotional requirements for Lieutenant.  He

---

[24]  Smith does not contest this information, but states that she has no first-hand knowledge of these events.  (Pl. Opp. 56.1 Stat. ¶52).

also, simultaneously, changed them for Sergeant, the position
that Smith held at the time.[25]  Thus, there is no indication that
his actions were targeted at Smith.

Even if the Court were to find that Smith set forth a prima
facie case of retaliation due to the change in promotional
criteria and the negative evaluation, she has failed to rebut
Defendants' legitimate, non-discriminatory reason for their
actions.  Chief Giordano testified that he changed the
promotional procedures to reflect his opinion that more emphasis
should be placed on past work and supervisory experience, rather
than examination scores.  (Giordano Dep. 92:15-24; Def. Ex. EE).
Furthermore, this was not the first time Giordano had changed the
promotional requirements.  Giordano changed the criteria for
Lieutenant in 1994, and for Sergeant in 1996.  Although Smith did
not receive the 1994 promotion, she was promoted to Sergeant in
1996.  There is nothing in the record to support the contention
that Giordano changed the promotional criteria in 2004 due to
Smith's testimony.

Giordano also testified that he gave Smith a zero out of

---

[25]  While Smith contends that the temporal proximity establishes a
causal connection, this is not the sole factor to consider in
determining causation.  *See Kachmar v. SunGard Data Sys., Inc.,* 109
F.3d 173, 177-78 (3d Cir. 1997) ("temporal proximity merely provides
an evidentiary basis from which an inference can be drawn. The element
of causation, which necessarily involves an inquiry into the motives
of an employer, is highly context-specific.")  Smith testified at
some point between July and October, 2004.  The adverse employment
action occurred in December, 2004.  This, alone, is insufficient to
establish causation.

fifty points for the Chief's recommendation for the promotion because of her extensive disciplinary history and the ongoing disciplinary process at the time.  (Pl. Ex. F, 94:1-10).  He stated that in scoring a candidate for promotion, he considered trustworthiness, ability to prioritize events, and ability to convey the view of management. (Id. at 95:6-16).  At the time Giordano completed her recommendation, Smith was the subject of disciplinary charges and an ongoing hearing.  She also had a record of falsifying police reports, improper shift relief and failure to properly supervise.  Smith has not offered any evidence to rebut Giordano's testimony of his legitimate, non-discriminatory reasons for changing promotional requirements or for giving her a poor evaluation.

Lastly, Smith claims that in retaliation for both protected activities, Defendants undermined her authority and subjected her to humiliation and degradation in front of her fellow officers on a daily basis. (Pl. Br. 23).  As stated in *Caver,* however, "harassment is not unlawful retaliation."  420 F.3d at 257 ("The CEPA is specifically designed to protect whistle-blowers from retaliatory discharges, suspensions, demotions and the like, but it does not provide a cause of action for generalized harassment").  Accordingly, Defendants' motion for summary

judgment on Smith's NJLAD and CEPA claims will be granted.[26]

## VI.

Finally, Defendants move for summary judgment on Smith's intentional infliction of emotional distress claim in Count Four of the Complaint.  Smith does not point to any specific conduct in support of this claim, but relies generally on the totality of Defendants' conduct set forth in paragraphs 3-42 of the Complaint.  She claims that as a result of Defendants' intentional conduct, she suffered severe emotional distress in the form of anxiety, depression, diarrhea, light-headedness, lack of appetite and extreme fatigue.  (Def. Ex. G, 154).

In order to establish a prima facie case for intentional infliction of emotional distress under New Jersey law, a plaintiff must show that:

> the defendant acted intentionally or recklessly, both in doing the act and producing emotional distress; the conduct was so outrageous in character and extreme in degree as to go beyond all bounds of decency; the defendant's actions were the proximate cause of the emotional distress; and the distress suffered was so severe that no reasonable person could be expected to endure it.

*Turner v. Wong*, 363 N.J. Super. 186, 199 (App. Div. 2003) (*citing Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 366 (1988));

*See also Restatement (Second) of Torts,* § 46.  The defendant's

---

[26]   The Court, therefore, does not have the opportunity to address Defendants' argument that there is no individual liability under CEPA.

conduct must be "regarded as atrocious, and utterly intolerable in a civilized community." *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 366 (1988) (*quoting Restatement (Second) of Torts* § 46 cmt. d (1965)).  "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *49 Prospect St. Tenants Ass'n v. Sheva Gardens, Inc.*, 227 N.J. Super. 449, 472 (App. Div. 1988) (*quoting Restatement (Second) of Torts*, § 46 cmt. d.)

Plaintiff has failed to show that Defendants' conduct was extreme or outrageous in nature.  Although Smith testified that her experience with her employment over the last several years has affected her physically and psychologically, none of Defendants' alleged conduct was so atrocious as to shock the conscience.  Indeed, courts have found conduct far more severe than Defendants' to be insufficient to support an intentional infliction of emotional distress claim.  *See, e.g.*, *Fregara v. Jet Aviation Business Jets*, 764 F. Supp. 940, 956 (D.N.J. 1991) (plaintiff threatened with discharge, asked to resign, overworked, required to attend counseling sessions dealing with his performance, told he was not doing a good job, given warning notices, and closely monitored).

In a factually similar case decided under Pennsylvania law, which also adopts the Restatement (Second) of Torts, § 46, the court held that a city and police department who suspended their

police captain for 15 days and transferred her after she testified on behalf of a former subordinate, was not sufficiently outrageous to support an intentional infliction of emotional distress claim. *Dooley v. City of Philadelphia*, 153 F. Supp. 2d 628, 665 (E.D. Pa. 2001). Like *Dooley,* although Defendants' conduct in issuing a suspension and loss of benefits was upsetting to Smith, it was not extreme or outrageous.

Furthermore, there is no evidence indicating that the emotional distress Smith allegedly suffered was so severe that no reasonable person could be expected to endure it. "A severe and disabling mental or emotional condition which is capable of being generally recognized and diagnosed by professionals trained to do so qualifies as severe emotional distress." *Hill v. New Jersey Dept. of Corrections Com'r Fauver*, 342 N.J. Super. 273, 297 (App. Div. 2001). Smith testified that she had never been hospitalized, no one ever suggested she be hospitalized, nor had she ever felt she needed to be hospitalized for mental health purposes. (Smith's Dep. 153-154). She also testified that she discussed her symptoms with a doctor, but he did not recommend that she seek further medical attention for her symptoms of diarrhea, lack of appetite, light-headedness and extreme fatigue. (Smith's Dep. 154:20-24, 155:11-15).

Although Smith's employment with the East Greenwich Police Department may have had an emotional impact on her, there is

insufficient evidence to support a claim for intentional infliction of emotional distress.  Thus, Defendants' motion for summary judgment on Count Four will be granted.

**VII.**

For the reasons set forth above, Defendants' motion for summary judgment on all counts of Plaintiff's Complaint will be granted.  The Court will issue an appropriate Order.


Dated: October 30, 2007.

                                   s/    *Joseph E. Irenas*
_____
                              **JOSEPH E. IRENAS, S.U.S.D.J.**